# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **G.M., F.M., and A.C.**

**No. 19-0844** (Wood County 18-JA-150, 18-JA-151, and 18-JA-152)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.W., by counsel Heather L. Starcher, appeals the Circuit Court of Wood County's August 21, 2019, order terminating her parental rights to G.M. and F.M., and her custodial rights to A.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Courtney Ahlborn, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating both her post-adjudicatory and post-dispositional improvement periods and in terminating her parental rights without first considering less-restrictive alternatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed a child abuse and neglect petition against petitioner.[2] Specifically, in response to a "crisis call," a Child Protective Services ("CPS") worker spoke to petitioner, who admitted a history of drug abuse. Further, petitioner admitted that she actively used Xanax, marijuana, and methamphetamine, and also sold drugs to make extra money. Despite these admissions, petitioner claimed that she did not have a drug problem and stated she

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]At the time the petition was filed, F.M. and G.M. resided with petitioner. A.C., petitioner's oldest child, resided with his aunt and uncle, his legal guardians. However, petitioner did have continued contact with A.C.

1

could function as a parent. The DHHR also alleged that petitioner had a history of domestic violence in her romantic relationships. A safety plan was put in place, and the children were placed in the home of petitioner's friend. However, the friend returned the children to petitioner's care the following day. Afterwards, law enforcement officers went to petitioner's home to check on the children and observed drug paraphernalia in the home. As a result, CPS workers removed the children from the home. During the removal, petitioner told F.M. to "be as bad as you can be" and attempted to "charge" the CPS worker but was restrained by officers. Based on the foregoing, the DHHR alleged that petitioner's substance abuse impaired her ability to parent her children, that she failed to provide adequate supervision of the children, and that she failed to protect the children by exposing them to domestic violence.

The circuit court held an adjudicatory hearing in November of 2018. Petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period. As part of the terms and conditions of the improvement period, petitioner was required to participate in parenting and adult life skills classes, participate in supervised visitation upon her submission of a negative drug screen, submit to a parental fitness evaluation, submit to random drug screens, and complete inpatient drug treatment.

At a status hearing held on January 8, 2019, the DHHR moved the circuit court to terminate petitioner's post-adjudicatory improvement period. The DHHR advised the circuit court that petitioner entered into a short-term inpatient treatment facility but left after only six days without completing the program. Thereafter, petitioner tested positive for methamphetamine and amphetamine. The circuit court terminated petitioner's post-adjudicatory improvement period, but continued services until the dispositional hearing. On February 5, 2019, petitioner entered into a long-term inpatient treatment program.

In March of 2019, the circuit court held a dispositional hearing. Petitioner moved the circuit court for a post-dispositional improvement period based upon her admission into a long-term inpatient treatment program. The DHHR did not object to petitioner's motion. The circuit court found that petitioner demonstrated a substantial change in circumstances and granted her a post-dispositional improvement period, the terms of which were identical to those of the post-adjudicatory improvement period. The following day, petitioner left the long-term inpatient treatment facility without completing the program.

The circuit court held a hearing in April of 2019 to address the DHHR's recently-filed motion to terminate petitioner's post-dispositional improvement period. Petitioner testified that she left the long-term inpatient treatment program because she felt that the treatment was inadequate. Petitioner claimed that since leaving the program, she was attending therapy and drug counseling twice a week at an outpatient facility. However, she later conceded that she had not yet started drug counseling. Regarding the DHHR's claims that petitioner had not submitted to a drug screen since leaving the inpatient treatment program, petitioner testified that she attempted to screen but was told that she had to speak with her caseworker first. Petitioner also said that, despite leaving voicemails for the caseworker regarding drug screening, the caseworker allegedly never responded. Petitioner further testified that she was unable to visit with her children because the DHHR had suspended that service. A DHHR worker testified that she had not checked her

2

voicemails in a few weeks and, thus, did not know if petitioner left her a message regarding reinitiating drug screens. After hearing testimony, the circuit court terminated petitioner's post-dispositional improvement period due to her leaving the long-term inpatient treatment program.

After two continuances, the circuit court held a dispositional hearing in August of 2019. The DHHR presented four reports to the circuit court and requested that it take judicial notice of the entire court file. Petitioner testified that she had been in a third inpatient treatment facility for sixty-six days. Petitioner stated that she received mental health services and individual therapy once a week and spent over three hours per day in group therapy. Petitioner also noted that she attended Narcotics Anonymous meetings in the evenings and submitted to drug screens at the facility, all of which were negative. However, petitioner conceded that she had been placed on a "behavioral contract" at the facility for her "outbursts towards other peers and staff" and disrespectful behavior. Petitioner also admitted that she "created negativity and tension with other clients" and wanted to leave treatment as recently as "a couple weeks ago." At the close of evidence, the circuit court held the matter in abeyance to give the guardian the opportunity to speak with petitioner's oldest child, A.C., about his wishes.

Later in August of 2019, the guardian submitted a report indicating that, although A.C. had no plans to visit with petitioner at that time, he did desire continued contact with her through social media and the opportunity for future visitation. On August 21, 2019, the circuit court issued its dispositional order wherein it found that petitioner had exhausted all of her chances for a successful improvement period and that her prior improvement periods were terminated due to her noncompliance. The circuit court specifically noted that petitioner left her second inpatient treatment facility less than twenty-four hours after having been granted a post-dispositional improvement period. The circuit court further noted that, although petitioner was compliant with services as of the dispositional hearing, it did not believe that she would remain in and complete inpatient treatment given her "track record." In fact, petitioner continued to display anger issues and admitted a recent desire to leave treatment. The circuit court concluded that petitioner had habitually abused or was addicted to drugs, to the extent that her parenting skills were seriously impaired, and that she had not responded to or followed through with the recommended treatment. Accordingly, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect in the near future and that termination was necessary for the children's welfare. Specifically, the circuit court terminated petitioner's parental rights to G.M. and F.M. However, upon consideration of A.C.'s wishes, the circuit court terminated only petitioner's custodial rights to A.C. Petitioner appeals the circuit court's August 21, 2019, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

---

[3]The parental rights of the father of G.M. and F.M. were terminated below. The permanency plan for these two children is adoption in their current foster placement. The father of A.C. was nonabusing below; however, the child has been in the legal guardianship of his aunt and uncle since before the initiation of the underlying proceedings. The permanency plan for A.C. is to remain in this legal guardianship.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner assigns as error the circuit court's termination of her parental rights when there was insufficient evidence to support a finding that she was not reasonably likely to correct the conditions of abuse in the near future.[4] According to petitioner, she had been complying with services through an inpatient treatment program for sixty-six days as of the dispositional hearing. She testified that she would fully cooperate with anything required of her. Petitioner also

---

[4]Petitioner also argues that the circuit court erred in terminating her post-adjudicatory and post-dispositional improvement periods. However, petitioner's brief is inadequate as it lacks citation to the record or applicable law. Indeed, apart from providing the standard of review, petitioner fails to provide a single citation in support of either of these arguments. Petitioner's failure to provide any support for her argument is in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, as follows:

The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered on December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented . . . as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Because petitioner's brief with regard to this assignment of error is inadequate and fails to comply with Rule 10(c)(7), we decline to address it on appeal.

4

contends that the circuit court erred in not considering a less-restrictive alternative to the termination of her parental rights. Petitioner argues that the circuit court should have terminated only her custodial rights to G.M. and F.M. given their age and bond with her. Petitioner states that termination of only her custodial rights would not have been detrimental to their best interests, especially given the progress she was making while in inpatient treatment. We disagree.

West Virginia Code § 49-4-604(b)(6) (2019)[5] provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c) (2019) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when "the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Such conditions exist when the "parent . . . ha[s] habitually abused or [is] addicted to drugs . . . to the extent that proper parenting skills have been seriously impaired and the person . . . ha[s] not responded to or followed through the recommended and appropriate treatment" or when "the abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts . . . designed to reduce or prevent the abuse or neglect of the child[ren]." W. Va. Code §§ 49-4-604(b)(1) and (3) (2019).

Here, the evidence demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. During the proceedings below, petitioner stipulated that her drug abuse impaired her ability to properly parent her children and agreed that completion of an inpatient drug treatment program would be a term of her improvement period. Nevertheless, petitioner left her first inpatient treatment program after only six days and, thereafter, tested positive for methamphetamine and amphetamines, resulting in the termination of her post-adjudicatory improvement period. Petitioner then entered a second inpatient treatment program and requested a post-dispositional improvement period based upon that change in her compliance. However, petitioner left that facility less than twenty-four hours after being granted her post-dispositional improvement period. Although petitioner testified at the dispositional hearing that she entered a third inpatient treatment program and was progressing, her testimony during cross-examination revealed that she had been placed on a behavior contract, a disciplinary measure, for her outbursts and negative attitude towards others. Further, petitioner admitted that she considered leaving the program as recently as two weeks prior to the hearing due to the behavior contract. Based on the foregoing, the circuit court concluded that petitioner had exhausted her improvement periods and believed that petitioner would not remain in inpatient treatment given her history. To the extent that petitioner argues the circuit court should have considered less-restrictive alternatives to the termination of her parental rights to G.M. and F.M., we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4 (citing syl. pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Moreover,

---

[5]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Having reviewed the record, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare given her failure to timely follow through with services designed to address her substance abuse. Therefore, petitioner is entitled to no relief.[6]

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 21, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[6]Although we find that petitioner is entitled to no relief on appeal, we nonetheless remind the DHHR to remain diligent in its availability to address issues regarding the implementation of services designed to reunify parents and children in abuse and neglect proceedings. As set forth above, a DHHR employee in this matter admitted that she had not checked her voicemail for a matter of weeks during a period when petitioner was attempting to reinitiate drug screens. According to West Virginia Code § 49-4-604(b)(7) (2019), the DHHR has, in most circumstances, a statutory duty "to make reasonable efforts to preserve the family" in abuse and neglect proceedings. Availability for communication with parents is an integral part of fulfilling this duty.